**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO.: 9:25-cv-80008-DSL**

DEMETRIOS PANTELEAKIS,

    Plaintiff,

v.

WAYPOINT RESIDENTIAL, LLC,
a Delaware limited liability company, and
WAYPOINT CONSTRUCTION GROUP, LLC
f/k/a OLYMPUS CONSTRUCTION, LLC,
a Delaware limited liability company

    Defendants.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DEMETRIOS PANTELEAKIS (hereafter "Plaintiff" or "Mr. Panteleakis"), by and through his undersigned counsel, hereby sues Defendants, WAYPOINT RESIDENTIAL, LLC, (hereafter "WAYPOINT") a Delaware Limited Liability Company and WAYPOINT CONSTRUCTION GROUP, LLC f/k/a OLYMPUS CONSTRUCTION GROUP, LLC, a Delaware Limited Liability Company, and in support thereof, alleges as follows.

## JURISDICTION AND VENUE

1. This is an action for damages that exceeds $75,000.00, exclusive of interest, costs, and attorney's fees.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all acts complained of occurred in Palm Beach County, Florida, and the employment relationship

referenced herein was located in Palm Beach County, Florida.

4. Venue is also proper in Palm Beach County because Defendant has offices in Palm Beach County, and critical witnesses and documents which constitute the bulk of the evidence in this case are in Palm Beach County, Florida.

5. All conditions precedent to bringing this action have occurred or been waived.

## THE PARTIES

6. Plaintiff, DEMETRIOS PANTELEAKIS, is a resident of Ludlow, Massachusetts.

7. At all times material, Defendant, WAYPOINT RESIDENTIAL, LLC, was a Delaware for-profit limited liability company doing business in Florida with its principal place of business in Stamford Connecticut.

8. The sole member of the Defendant, WAYPOINT RESIDENTIAL, LLC, is SJL Waypoint Managing Member, LLC, a Delaware limited liability company.

9. At all times material, Defendant, OLYMPUS CONSTRUCTION GROUP, LLC, was a Delaware for-profit limited liability company doing business in and licensed in Florida with its principal place of business in Boca Raton, Florida.

10. The sole member of Defendant, OLYMPUS CONSTRUCTION GROUP, LLC, is MAP CS Holdings, LLC, a Delaware limited liability company.

## GENERAL ALLEGATIONS

11. On February 15, 2020, WAYPOINT hired Plaintiff to serve as the Senior Managing Director of MAP Construction Services, LLC, the construction arm of Defendant, WAYPOINT.

12. In May 2022, MAP Construction Services, LLC changed its name to Olympus Construction Group, LLC.

13. WAYPOINT is a vertically integrated developer, builder, owner and operator of apartment properties throughout the Sunbelt region of the United States.

14. At the time he was hired, the parties agreed Plaintiff would commute from his residence in Massachusetts weekly with the flexibility at Plaintiff's own cost in a hybrid role. Plaintiff was working remotely for Defendant in Massachusetts and would travel to Florida weekly or as needed to meet with management and his team on various job sites from New Jersey to Florida. The parties memorialized the terms of Plaintiff's employment in an Offer Letter dated January 25, 2020 attached hereto as Exhibit "A".

15. In April 2024, after several months of negotiations, Defendant encouraged and induced Plaintiff to move to Florida rather than continue in a hybrid role commuting from Massachusetts. Plaintiff would not have moved or relocated himself or his family but for Defendants strong overtures, assurances, and promises. As a result, Defendant offered Plaintiff a new compensation package with significant incentives and an immediate $50,000.00 raise (the "Agreement"). A copy of the revised compensation Agreement together with the Compensation Summary and Promote Vesting Schedules are attached as Composite Exhibit "B".

16. The Agreement also provided Plaintiff with additional income for projects he was tasked with overseeing, including 2% - 4% bonus from the construction fee collected monthly by Waypoint in each pay application to the individual project's construction lender. The 2% - 4% bonus was to be reviewed and paid quarterly based on each individual project's financial performance. The financial performance refers to both the General Conditions line-item management and the buyout savings on hard construction

costs. The quarterly evaluations were to be individual to each project and not collective to all projects and Plaintiff was also to receive 1% on all WAYPOINT development deals. *See* Ex. "B".

17. Contemporaneously with the months-long negotiation period relating to the Agreement, Plaintiff was incentivized and induced to relocate his family, including his wife and minor children, from Massachusetts to Florida. This required his wife to leave behind the longstanding employment she had in Massachusetts and give up her 26-year employment that included a pension with her employer. As well, because of Defendant's representations and inducements, Plaintiff removed his children from school in Massachusetts and enrolled them in schools in Florida.

18. To facilitate the purchase of a home in Florida while selling his home in Massachusetts, Defendant gave Plaintiff a $150,000.00 loan which he paid back in or about March 2024 when he closed on the sale of his home in Massachusetts. Notably, because Defendant required Plaintiff to relocate to Florida quickly, Plaintiff was forced to sell his house and accepted an offer $130,000.00 below market price on his Massachusetts residence.

19. WAYPOINT was aware that Plaintiff's wife was leaving behind her employer of 26 years as this was discussed during the negotiations between the parties. Plaintiff is now unable to relocate back to Massachusetts until June 2025 at the earliest.

20. As part of his employment, Plaintiff was responsible for all construction division operations and budgets, including, but not limited to the bid process, contracting of all sub-contracts, OSHA compliance, budget management, hiring and termination of all staff, fixed asset management, all legal issues, and any items as the division head.

21. On or about August 6, 2024, Plaintiff met with Jill Jones, Head of Accounting, to discuss General Conditions budgets in the projects Plaintiff was overseeing. General Conditions budgets require that money remain in specific accounts and allocated categories in accordance with Florida Law. Ms. Jones stated that the General Conditions funds belonged to the owner of WAYPOINT, Scott Lawlor, and that they needed to "save money." Plaintiff informed Ms. Jones that the money only belonged to Mr. Lawlor once the project was complete, and that it was not permissible to move those funds out of the General Conditions as they were required to remain for the completion of the project in accordance with Florida Law.

22. Plaintiff further addressed the buyout savings with Ms. Jones which was set as policy to be in a line item called "Hard Cost Buy Out Savings" and also needed to remain in that line item until the project final pay application where any funds remaining could be moved to contingency and disbursed.

23. Plaintiff was adamant with Ms. Jones and other management team members that both categories were required to remain in those budgets in order to stay complaint with Florida laws regarding development and construction.

24. On August 7, 2024, the day following Plaintiff's conversation with Ms. Jones, Johnathan Brundridge, COO, spoke to Plaintiff and reiterated that all the General Conditions funds belonged to Mr. Lawlor. It was the only thing Mr. Brundridge addressed with Plaintiff in that conversation, and he was firm about this point. In response, Plaintiff stressed, as a non-practicing attorney (i.e., Plaintiff also has a law degree), the classification of the "General Conditions" funds as belonging to Mr. Lawlor would be violative of Florida Law. Plaintiff refused to participate in this practice and informed Mr.

Brundridge of the illegalities and his genuine concerns associated with WAYPOINT's position on the General Conditions funds.

25. On August 14, 2024, Plaintiff was summoned to Mr. Brundridge's office and was instructed to inform his three (3) senior staff members that they were being terminated from their employment at the end of the month. Plaintiff was not consulted or otherwise informed of the terminations prior to being told to effectuate them.

26. The three (3) senior staff positions were funded strictly by the "General Construction" line items of the projects.

27. Shortly thereafter, all monthly financial reports WAYPOINT provided to Plaintiff throughout his tenure involving the General Conditions and his division, as well as the routinely scheduled bi-weekly meetings with the management team to review these reports, ceased altogether. Prior to Plaintiff raising concerns regarding WAYPOINT improperly moving the General Conditions monies he had complete transparency and control of all budgets.

28. On October 28, 2024, Plaintiff requested a run-down of all the financials from Ms. Selina Bello, specifically the "hard cost buy out savings" of each project. Ms. Bello informed Plaintiff that Ms. Jones had them moved into contingency without consulting or otherwise informing Plaintiff.

29. On November 1, 2024, Plaintiff was terminated from his employment with WAYPOINT.

30. Plaintiff has retained the undersigned counsel to represent his interest in this action and is obligated to pay a reasonable fee for their services.

## COUNT I
### *Florida's Private Whistleblower's Act*

31. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 30.

32. This is an action for damages pursuant to Florida's Private Whistleblower's Act, Fla. Stat. §448.102.

33. Pursuant to Fla. Stat. §448.102, an employer may not take any retaliatory personnel action against an employee because the employee has objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

34. In contravention of said whistleblower statute, Defendant terminated Plaintiff in direct retaliation for objecting to and/or refusing to participate in a policy, practice or activity that was a violation of a law, rule, or regulation.

35. Plaintiff's treatment and subsequent termination following his refusal to participate in an activity, policy, or practice of Defendant in a violation of a law constitute an adverse employment action.

36. Plaintiff's objections to actions he reasonably believed to be a violation of law, and his termination are wholly related. Specifically, even though WAYPOINT and Mr. Lawlor are the "owner/developer" of the project, the other owners are investors. If money intended for the completion of the projects and money originating from the construction loan with lenders is removed prior to completion of the project, it is a violation of Fla. Stat. §§489.126 and/or 713.345.

37. In addition, if money is diverted from the pay applications from the lenders received by Defendant to pay sub-vendors and those funds are diverted and not paid to

the sub-vendors, it is a violation of Fla. Stat. §§489.126 and/or 713.345. This issue arose during recent pay periods when sub-vendors were complaining about only receiving partial payments as opposed to receiving payment in full.

38. Defendant has no legitimate basis for Plaintiff's termination.

39. The conduct of Defendant deprived Plaintiff of his rights under Fla. Stat. §448.102 to make legitimate complaints related to Defendant's violations of law.

40. As a result of Defendant's unlawful acts as above-described, Plaintiff has and will continue to incur damages and attorney's fees, which are recoverable under Fla. Stat. §448.102.

41. As a result of Defendant's retaliatory actions, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, the following:

   a. Compensation for lost wages (i.e., compensation, bonuses, promote, and revenue share), benefits, and other remuneration;

   b. Prejudgment interest;

   c. Emotional pain and suffering, humiliation, and any other compensatory damages allowable by law;

42. In addition to recovery of the above damages, Plaintiff seeks:

   a. Reinstatement of Plaintiff to the same position held before the retaliatory personnel action, or to an equivalent position including his compensation, benefits and seniority rights;

   b. An injunction restraining continued violation of the FWA;

   c. His reasonable attorney's fees and costs;

   d. Such other relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff, DEMETRIOS PANTELEAKIS, demands judgment against Defendant for any and all damages; declaratory relief; civil penalties; costs and attorneys' fees; and for such other relief as the Court deems just and equitable.

## COUNT II
### Breach of Contract

43. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 30.

44. In or about April 2024, the parties entered into the Agreement, prepared by a representative of the Defendant. *See* Ex. "B".

45. Plaintiff performed all the conditions and obligations under the Agreement.

46. Defendant failed in its contractual duties to perform its obligations under the Agreement.

47. The actions of Defendant constitute a breach of the Agreement and/or contract between the parties in that Plaintiff earned revenue sharing and promote sharing during his employment and has not received compensation for the amounts earned.

48. As a direct and proximate result of the Defendant's breach of the Agreement, the Plaintiff has sustained damages, including but not limited to the loss of wages, benefits and entitlements under the agreement and consequential damages.

49. As a result of the breach of the Agreement by Defendant, Plaintiff has retained the undersigned counsel and is obligated to pay them costs and attorney's fees.

50. As a direct and proximate legal result of Defendant's breach of contract, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

   a. Unpaid earnings, wages, bonuses, revenue share, promotes;

   b. Damages arising from the breach;

   c. Prejudgment and post-judgment interest;

   d. Attorney's fees and costs pursuant to Fla. Stat. § 448.08; and

      e.      Such other relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff, DEMETRIOS PANTELEAKIS, demands judgment against Defendant for the aforementioned relief and damages.

### COUNT III
### *Unjust Enrichment*

51. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 30.

52. This is an action for equitable relief within the equitable jurisdiction of this Court.

53. By virtue of Plaintiff's refusal to perform activities related to Defendant's intentional, illegal and/or negligent accounting practices to misclassify the "General Conditions" funds as belonging to Mr. Lawlor, Defendant terminated Plaintiff's employment and refused to pay him money he is owed in accordance with the Agreement.

54. As a result, Plaintiff has conferred benefits upon Defendant, and it has been unjustly enriched as a result.

55. Defendant had knowledge of such benefits and voluntarily accepted and retained the benefits conferred.

56. Based upon their above-described conduct, the circumstances are such that it would be inequitable for Defendant to retain the benefits without paying the value thereof to Plaintiff.

57. As a direct and proximate result of Defendant's conduct, it has been unjustly enriched by all work performed by Plaintiff for which Defendant benefitted without paying him in accordance with the terms of Exhibit B.

58. Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff, DEMETRIOS PANTELEAKIS, demands judgment against Defendant for damages, costs and disbursements, and such other relief as this Court deems just and proper.

### COUNT IV
### Unpaid Wages, Section 448.08, Florida Statutes

59. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 30.

60. Plaintiff earned revenue sharing and promote sharing over the course of his employment, which remains unpaid by Defendant.

61. Defendant, despite Plaintiff's reasonable attempts to obtain payment of these earned monies, has failed and refused to make payments as required by Chapter 448.08, Florida Statutes.

62. Plaintiff has retained undersigned counsel and is obligated to pay them a reasonable fee for their services.

**WHEREFORE**, Plaintiff, DEMETRIOS PANTELEAKIS, respectfully requests all legal and equitable relief allowed by law including judgment against Defendant, for back pay, unpaid wages, revenue and promotes sharing, liquidated damages, prejudgment interest, payment of his reasonable attorneys' fees and costs incurred in the prosecution of the claim and such other relief as the Court may deem just and proper.

### COUNT V
### Fraud in the Inducement

63. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 30.

64. Defendant induced Plaintiff into entering into the Agreement with it for the purpose of bringing his proprietary knowledge and expertise, business plan, know-how, and the overall where-with-all for the Defendant to utilize and benefit from same.

65. Defendant never previously was involved in the construction side of the development business prior to Plaintiff's employment; Plaintiff brought this aspect of the business to Defendant, WAYPOINT together with all is knowledge and know-how.

66. Defendant never intended to let Plaintiff retain his proprietary knowledge, business plan, know-how, etc., or pay Plaintiff the value of his services in accordance with the Agreement if his employment was terminated.

67. Plaintiff relied on the employment with Defendant, and accepted Defendant's offer, thereby giving Defendant unlimited access to his proprietary knowledge, contacts, clients, business plan, know how, etc.

68. Plaintiff relied on the employment with Defendant and was induced to uproot his family, sell his house at a loss, and have his wife leave her employment of 26 years, to relocate to Florida.

69. Defendant knew that Plaintiff would rely on their representations, compensation incentives and the employment in order to induce Plaintiff to accept the employment and give Defendant access to the information alleged hereinabove.

70. Plaintiff has suffered damages as a result of relying on the representation of employment.

71. Plaintiff has hired the undersigned attorneys and has agreed to pay them a reasonable fee for their services.

72. Plaintiff was damaged further by the necessity to retain counsel to commence litigation seeking to recover all sums which he is entitled to given the acts as alleged herein above.

73. Plaintiff reserves the right to amend this Complaint to seek punitive damages upon a reasonable showing of a basis for the recovery of such damages pursuant to Fla. Stat. § 768.72.

**WHEREFORE**, Plaintiff demands judgment against Defendant, together with pre and post judgment interest, attorney's fees and court costs, and any additional relief that this Court deems just and proper.

## COUNT VI
### *Accounting*

74. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1 through 30.

75. This is an action for equitable relief within the equitable jurisdiction of the Court.

76. Before the institution of this action Plaintiff and Defendant had business transactions between them.

77. Plaintiff has made numerous requests for an accounting to determine the exact amount due and owing from Defendant.

78. Defendant owes Plaintiff net revenue sharing and promote sharing, pursuant to the parties' Agreement and as set forth in Exhibit B.

79. To date Defendant has failed to provide an accounting and has also failed to make all payments to Plaintiff.

**WHEREFORE,** Plaintiff, DEMETRIOS PANTELEAKIS, prays that judgment be

entered in his favor and against the Defendant for all damages, interest, costs, reasonable attorney's fees pursuant to Florida Statute §448.08 and all such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff herein demands trial by jury of all issues in this action.

                Respectfully submitted,

DEUTSCH ROTBART & ASSOCIATES, P.A.
Attorney for Plaintiff
4755 Technology Way, Suite 106
Boca Raton, Florida 33431
Telephone:  561.361.8010
Email: edrotbart@dralawfirm.com

BY:   */s/ Erika Deutsch Rotbart*
       Erika Deutsch Rotbart
       Florida Bar No.:  0047686

Law Office of Lisa C. Lambert
245 N. Highland Avenue
Suite 230-139
Atlanta, GA 30307
(404) 556-8759
Email: lisa@civil-rights.attorney

Lisa C. Lambert
Florida Bar No.: 495298

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **October 8, 2025**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I also certify that the foregoing document is being served automatically through the CM/ECF system this day on all counsel of record identified on the service list.

                                         */s/ Erika Deutsch Rotbart*
                                         Erika Deutsch Rotbart

## SERVICE LIST

DEUTSCH ROTBART & ASSOCIATES, P.A.
4755 Technology Way, Suite 106
Boca Raton, Florida 33431
Telephone:  561.361.8010
Email: edrotbart@dralawfirm.com

BY:     */s/ Erika Deutsch Rotbart*
           Erika Deutsch Rotbart
           Florida Bar No.:  0047686

Lisa C. Lambert
Florida Bar No. 495298
Law Office of Lisa C. Lambert
245 N. Highland Avenue
Suite 230-139
Atlanta, GA 30307
(404) 556-8759
lisa@civil-rights.attorney

*Attorneys for Plaintiffs*
GREENBERG TRAURIG, P.A.
777 S. Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
Tel: 561.650.7985
Email: gerbert@gtlaw.com
        pantaleob@gtlaw.com

*Attorneys for Defendants*